BAKER ET AL. *v.* WESTERN HORSEMEN COMPANY.

[No. 15,126. Filed October 16, 1935.]

Kane, Blain & Hollowell, Jonas P. Walker, and Charles H. Cook, for appellants.

Frank C. Olive, Raymond S. Springer, and Charles Tindall, for appellees.

CURTIS, P. J.—This was an action in the trial court by the appellant against the appellee seeking to recover the sum of $4000.00 as the prize money alleged to have been won by the horse "Contender" and the horse "Petroguy" in two races run at the Fair Grounds at Indianapolis, Indiana, under the auspices of the Indiana State Board of Agriculture at the State Fair held in 1929. The appellants were the owners of said horses. The horse "Contender" ran second in his race and the horse "Petroguy" ran first in his race. The amount of the purse distributable to the owner of the second place horse in the race in which "Contender" ran was $2067.01 and the amount distributable to the owner of the first place horse in the race in which "Petroguy" ran was $1809.67. These two races were conducted under what is known as "Horseman Futurity No. 20" which consisted of a trotting and a pacing race.

The complaint was in one paragraph, which was answered by a general denial and a second paragraph. To the second paragraph of answer the appellant filed a reply in general denial and also an additional paragraph of reply. The appellee then

filed a rejoinder and the cause was thus put at issue. Upon proper request the trial court made a special finding of facts and stated its conclusions of law thereon. These were favorable to the appellee for whom a judgment was rendered. The appellants seasonably filed a motion for a new trial which was overruled and this appeal prayed and perfected. The errors relied upon for reversal are that the court erred in the ruling on the motion for a new trial and in each of its conclusions of law. The appellants in their brief do not present any questions as to the ruling on the motion for a new trial and thereby waive such alleged error. The finding of facts made by the trial court are therefore unchallenged and will be deemed by this court to be correct. Each of the four conclusions of law of the court are presented for review and will be considered.

The finding of facts is lengthy, consisting of more than 15 single spaced pages of the appellants' brief. We shall attempt to set out the salient parts. We quote part of finding number 2, as follows: "The Court finds that the defendant, The Western Horseman Company, is a corporation organized under the laws of the State of Indiana and is and has been for more than twenty years last past engaged in the printing business and among other things in the publication of a weekly newspaper devoted to the subject of breeding and development of trotting and pacing horses, commonly known under the general term as harness horses and also the publication of racing data of various race meeting held by County fairs and other racing associations in the State of Indiana and other States of the Union, which are published in said paper as items of general news on that subject. That among other activities of said defendant it has for a great number of years sponsored what is commonly known as 'The Horseman Futurity' which is an annual racing stake to

be contested by harness horses at the age of three years under certain rules and conditions and contained in a certain printed nomination blank adopted and used for said purpose."

The nominations were open for mares bred in the year 1925 with foals of 1926 to close November 1, 1925. Certain fees were to be paid on all nominations ranging over a period up to and including August 1, 1929, when a starting fee of $100.00 on trotters and $50.00 on pacers must be paid. The guarantee of the appellee in relation to the fees paid in is in the following language to wit: "The absolute guarantee of The Western Horseman Co. is that every dollar received in payments after the nomination fee and every cent of accrued interest (we never use a cent of stake money, but put every dollar out at interest the day it is received) shall go into the stake, and be paid out in spot cash to the winners." On May 1, 1929, there was an additional fee of $50.00 to be paid in on each trotter and $25.00 on each pacer. This fee was not paid by the appellants at such time but some days thereafter they sent a check for the amounts to the appellee which it returned with the explanation that it came too late. On August 1, 1929, the appellants sent a check for $150.00 to the appellee to cover the starting fee of "Contender" and "Petroguy" but this check was also returned by the appellee who then wrote a letter to the appellants telling them that these two horses had been automatically dropped on account of failure to make the said May 1, 1929 payments. The appellants made no further offer or tender of said moneys until immediately before the trial of this cause when said money was paid into court for the use of the appellee. We quote a part of finding number 11 as follows: "The court further finds that in the year 1929 there was in existence a corporation known as Harness Horse Association, with principal

offices in the City of Chicago, Illinois, and at the same time there was in existence another corporation known as The American Trotting Association with its principal offices in the City of Chicago, Illinois; that both of said corporations continued to exist until the time of this trial; that the objects of each of said corporations were the encouragement of the breeding and development of harness horses, the conducting of harness horse races under its auspices, rules and regulations, and the prescribing of rules and regulations for the conduct of harness horse races; that each of said corporations was a parent association within the meaning of term employed in the contract between the parties in this action; that each of said corporations at all times, including and since the year 1925, had a complete code of racing rules governing the conduct of races under its auspices and each of said corporations from time to time during their existence granted sanctions or authority to various racing associations to conduct race meetings under their respective rules and regulations; that said State Board of Agriculture of the State of Indiana obtained authority from said Harness Horse Association to conduct its races of September, 1929, under the rules and regulations of said Harness Horse Association and that the defendant obtained authority from said The American Trotting Association to conduct said Futurity No. 20 races under and pursuant to the rules and regulations of said The American Trotting Association which authority so obtained by the defendant was later adopted and ratified by said State Board of Agriculture of the State of Indiana."

"No. 13. The Court further finds that said Grand Circuit Race meeting conducted by said State Board of Agriculture, was held the first week of September, 1929, at the State Fair Grounds in Marion County, Indiana; that the Trotting Division of said Horseman

Futurity No. 20 was contested on the 2nd day of September, 1929; that there were a number of horses entered and which did contest in said Trotting Division the owners of which had fully complied with all of the requirements necessary to entitle them to be contestants in said race, other than the horse 'Contender' owned by the plaintiffs; that on the morning of September 2, 1929, the defendant notified the plaintiffs, through one Harry Jones, that the horses 'Contender' and 'Petroguy' could not start in the Futurity races; that prior to the beginning of the Trotting Division race on the 2nd day of September, 1929, one James Snell, who was the owner of one of the contesting horses in said trotting race, filed with the presiding judges at said race meeting, a written protest under oath, contesting the eligibility of the horse 'Contender' in said Trotting Division of said Futurity, and stated as his objections that the payment due May 1, 1929, on account of said horse 'Contender' had not been paid.

"The Court further finds that the plaintiffs caused said horse 'Contender' to be driven on to the race track when the plaintiffs were notified that the protest of the said James Snell had been filed against the horse 'Contender.' Such information was conveyed to them by Harry Jones, an assistant superintendent of speed at said race meeting; that the plaintiffs did not at that time or at any time during the week beginning September 2, 1929, make answer, either verbally or in writing under oath, to said protest; that the plaintiffs thereafter caused said horse 'Contender' to contest and participate in said Trotting Division of said Futurity Race on the 2nd day of September, 1929, and that said horse 'Contender' finished in second place in said race; that the amount of the purse distributable to the owner of the winner in second place was Two Thousand Sixty-seven Dollars and One Cent ($2067.01)."

The horse "Petroguy" was also protested on September 3, 1929, before the start of his race and finding Number 14 covers that fact in language similar in legal effect to said finding number 13. Finding number 14 contains this additional fact. "That said horses 'Contender' and 'Petroguy' contested said Futurity races without the consent of the defendant and without the consent of the State Board of Agriculture of the State of Indiana and that no part of the prize money was paid to the plaintiff on account of either division of said Futurity Race. That the race track was a first-class mile track." Finding number 16 is as follows: "That according to the rules and regulations governing each of said associations to wit: Harness Horse Association and The American Trotting Association, there was constituted a Board of Appeals to pass upon protests filed against horses contending in races conducted under their respective rules, regulations and authority, which Board of Appeals held their session in the City of Chicago; that after the close of said races in September, 1929, each of the protests above mentioned as entered against the horses 'Contender' and 'Petroguy,' together with certain affidavits in evidence, were submitted to the Board of Appeals of the American Trotting Association at Chicago, which Board of Appeals met and heard the matters concerning each of the said protests during the month of November, 1929; that the plaintiffs presented evidence for the consideration of said Board of Appeals in relation to said protests and the plaintiff Palin attended said hearing in person and testified in relation to said protests before said Board of Appeals; that the said Board of Appeals decided the matter of said protests against the plaintiffs that they were not entitled to any portion of the purses in either of said divisions of said Horseman Futurity No. 20; that said Board of Appeals after

making its original decision against the plaintiffs re-heard the matter of said protests and affirmed their original decision."

It is our opinion that the finding of facts fully sustains the conclusions of law and that each conclusion of law is correct. The trial court concluded that time was of the essence of the contractual relation and that the failure to make the May 1, 1929 payments on the two horses prevented their eligibility for their respective races. We think there can be no question as to the correctness of the trial court's conclusion. In order to keep these two horses eligible it was imperatively necessary to comply with the rules governing the races. Whatever rights they had to participate in the races depended upon their eligibility and when they failed to comply with the conditions of the race as to eligibility they had no rights. We need not speculate on the unfair advantage the appellants could have gained in the extra time they would get by their own delay in making the May 1, 1929 payments by acquiring additional knowledge not only as to the prospects of their own horses but as to the prospects of other eligible horses in the races. Many additional reasons could be given to sustain the judgment of the trial court but in our opinion the above is entirely sufficient. We have found no reversible error.

Judgment affirmed.